IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:06cr295-MEF-SRW |
| | ) | |
| JORGE GONZALEZ | ) | |

## MOTION TO SUPPRESS

**COMES NOW JORGE GONZALEZ** by and through undersigned counsel, Michael J. Petersen, and moves to suppress the search of the Peterbuilt tractor bearing Texas license plate R7TJ67 which he was driving southbound on Interstate 85 at about mile marker 12 on or about November 21, 2006. The items to be suppressed include any physical evidence seized and any items of evidence or statements that are the illegal "fruits" of the search.

### Relevant Facts

On or about Tuesday, November 21, 2006, Alabama State Trooper Chris Faulk was working traffic enforcement in Montgomery County, Alabama. At approximately 9:30 am, Trooper Faulk was parked in the median of Interstate 85 near the 16 mile marker when he observed a tractor trailer traveling south on Interstate 85. As the vehicle passed, Trooper Faulk allegedly observd the vehicle swerve oer onto the fog line. Trooper Faulk then pursued the vehicle and affected a traffic stop on the vehicle near the 12 mile marker of the southbound lane of Interstate 85.

When the vehicle stopped, the driver, Jorge Gonzalez exited the cab of the tractor. Trooper Faulk asked the defendant for his driver's license, log book, and bill of laden. Trooper Faulk advised the defendant of the reason for the traffic stop and asked various questions related to the traffic stop.

Trooper Faulk then asked the defendant for consent to search the vehicle and explained to

the defendant that he did not have to consent to the search. The defendant stated to Trooper Faulk that he could search the trailer, but that he did not consent to a search of the tractor because he had various personal items inside. Trooper Faulk then called for a K-9 unit to assist with the stop. Trooper Andy Sutley arrived at the scene with his K-9 to assist in the search. Prior to Trooper Sutley's arrival, Trooper Faulk issued an Alabama Traffic Warning for improper lane usage to the defendant. (Exhibit 1, Gov't Discovery Bates 7).

Trooper Sutley's K-9 then gave a positive alert for the odor of narcotics on the outside of the tractor and the Trooper Sutley entered the tractor and allowed the K-9 to search inside the tractor. Because a traffic stop with the issuance of a citation and no custodial arrest does not allow for a search of a vehicle or even a canine sniff, the continued detention of Mr. Gonzalez and the subsequent canine sniff and search of the defendant's Peterbuilt tractor bearing Texas license plate R7TJ67 on November 21, 2006 must be suppressed along with all items of evidence or statements that are the illegal "fruits" of the search.

## Discussion

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST., Amend IV. Once an officer gathers information necessary to complete an investigation, further exploratory searches based on "hunches" are not permitted. *United States v. Perkins*, 348 F.3d 965 (11th Cir. 2003).

While the Supreme Court held in *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 838 (2005) that the employment of a dog sniff during a legitimate traffic stop does not constitute a constitutionally cognizable intrusion upon legitimate privacy interests, in *Caballes*, the canine sniff occurred before the traffic citation was issued. Specifically, the Court held that conducting a dog

sniff would not change a traffic stop that was lawful when it began and was otherwise executed in a reasonable manner into an unlawful search, unless the manner in which the dog sniff itself was conducted infringed the citizen's constitutionally protected interest in privacy. *Id.* at 408. However, by detaining Mr. Gonzalez after the traffic warning was issued, the additional detention was unlawful. *Caballes* clearly assumed that the court would have been warranted in suppressing the evidence "if the dog sniff had been conducted while the respondent was being unlawfully detained." *Id.* Although the Court placed no probable cause or reasonable suspicion requirement on the ability to conduct a canine sniff for drugs during a legitimate traffic stop for a traffic violation, the Court did note, however, that "a seizure ... justified solely by the interest in issuing a warning ticket to the driver can become unlawful if ... prolonged beyond the time reasonably required to complete [the issuance]." *Id*. at 407. In other words, the Court placed a "reasonableness" limitation on the duration of such encounters but refused to put any other limitations on the ability of police to conduct canine sniffs during the course of a traffic stop or even to expand on what "reasonable" may mean in a traffic stop situation.[1] When Mr. Gonzalez was required to wait for the arrival of Trooper Sutley and the K-9, this seizure had become unlawful because it had been prolonged beyond the time required to complete the issuance of the traffic warning.

The primary reason the canine sniff was improper is because there was simply no reason to further detain Mr. Gonzalez because Trooper Faulk had completed the issuance of the traffic warning. When law enforcement officers make a traffic stop and issue a citation as they did in this situation, and do not make a custodial arrest, they may not thereafter conduct a canine sniff of a

---

[1]This limitation on the duration actually has nothing to do with the canine sniff itself but rather points to the fact that a prolonged detention of a driver beyond the time required to issue the warning or citation could result in the detention being deemed an arrest for Fourth Amendment purposes, an arrest for which the officer would have no probable cause or likely even reasonable suspicion. *Id*.

vehicle on the theory that it is a search incident to an arrest. *Id. See also Knowles v. Iowa*, 525 U.S. 113 (1998). In *U.S, v. Perkins*, the Eleventh Circuit held that although the duration of traffic stop that a patrol officer initiated after observing an out-of-state vehicle veer onto a shoulder of the highway, while the officer inspected the driver's driving license and insurance information, questioned driver, requested license check, questioned passenger, issued warning citation, and ultimately, based upon the driver's nervousness and differing responses that the officer received from the driver and passenger as to the purpose of trip, radioed for drug dog and conducted search of the vehicle, was not itself a violation of the Fourth Amendment, the driver's nervousness and the driver's and passenger's differing, but not inconsistent statements *did not provide the requisite reasonable suspicion to justify continuation of stop after warning ticket was issued*. *U.S. v. Perkins*, 348 F.3d 965 (11th Cir. 2003)(*emphasis added*). Once Trooper Faulk had issued the warning citation, Mr. Gonzalez was free to leave, and his continued detention while awaiting the K-9 unit's arrival was improper. *See also U.S. v. Bentley*, 151 Fed. Appx. 824 (11th Cir. 2005) (holding that Criminal history *alone* is insufficient to give rise to the necessary reasonable suspicion)(*emphasis in original)*.

While it would appear that the Eleventh Circuit has not yet addressed the question of the impact of *Cabelles* on the issue of a traffic stop, it was raised both in Justice Ginsburg's *Cabelles* dissent and by the Seventh Circuit. Magnifying a separate concern raised by the *Caballes* decision, and specifically addressed by Justice Ginsburg in her dissent, (noting that by giving the police the ability to conduct a canine sniff without any probable cause and even in light of a denial of consent to search, the Court effectively stripped individuals of the right to ignore and deny police requests to search). Following the *Caballes* decision, the United States Court of Appeals for the Seventh Circuit, in *United States v. Johnson*, specifically brushed aside the issue of a driver's consent to search the vehicle, stating that "[Caballes] makes it irrelevant whether [the driver's] consent for the

dog sniff was voluntary." *United States v. Johnson*, 123 F. App'x. 240, 240 (7th Cir. 2005); *Caballes*, 542 U.S. at 423 (Ginsburg, J., dissenting). . In place of the voluntary consent issue, the court substituted the issue of whether the trooper initiating the stop had completed the citation process before the canine sniff occurred; finding that the sniff began before the citation was written, the court affirmed the lower court's denial of Johnson's motion to suppress. *Johnson* 123 F.App'x at 240. However, in the instant matter, the sniff began after the citation was written and is therefore improper.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Const. Amend IV. While not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and that it is analogous to an investigative detention. *United States v. Perkins*, 348 F. 3d 965, 969 (11th Cir. 2003). Therefore, the legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* requires that such stops require "an officer [to] have an objective, reasonable suspicion of criminal activity," before seizing an individual. *Id*.

Drivers and their vehicles can be detained after a valid traffic stop while a "license check" or "criminal history check" are being conducted. *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003). However, after an individual has been issued a citation or warning ticket, any prolonged detention of an individual without "reasonable suspicion" of other criminal activity is a violation of the Fourth Amendment. *Caballes*, 542 U.S. at 407; *Boyce*, 351 F.3d at 1107; *Perkins*, 348 F.3d at 970. *See also Johnson* 123 F.App'x at 240.

Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify such an investigatory stop is determined based on the totality of the circumstances, and from the collective

knowledge of the officer involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (*citing, Terry v. Ohio* at 1879); *See also, United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop). The fact that the driver and passenger provide slightly inconsistent statements or are nervous does not create "reasonable suspicion" upon which a further detention is warranted. *Perkins*, 348 F.3d at 965.

At an evidentiary hearing, Mr. Gonzalez will show that after the warning ticket was issued, Trooper Faulk had no "reasonable suspicion" upon which he could base any further detention. Because the further detention of Mr. Gonzalez was prohibited by the Fourth Amendment, any questioning, answers and consent that stem from the further detention must be suppressed/excluded. *Caballes*, 542 U.S. at 407; *Perkins*, 348 F.3d at 969 (*citing United States v. Terzado-Madruga*, 897 F.3d 1099, 1112 (11th Cir. 1990)). If the consent to search a car is the product of an unlawful detention, the consent will be ineffective to justify the search since it is tainted by illegality. Mr. Gonzalez was not advised of his rights and placed under arrest until after the canine sniff and subsequent search had been conducted. Therefore, the search was improper.

WHEREFORE, the Mr. Gonzalez prays that this Honorable Court conduct an evidentiary hearing to review the facts and circumstances surrounding the search of the Peterbuilt tractor bearing Texas license plate R7TJ67. Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Dated this 10th day of January 2007.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:06cr295-MEF-SRW |
| | ) | |
| JORGE GONZALEZ | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 10, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Susan Redmond.

                              Respectfully submitted,

                              s/ Michael J. Petersen
                              MICHAEL J. PETERSEN
                              Assistant Federal Defender
                              201 Monroe Street, Suite 407
                              Montgomery, Alabama 36104
                              Phone: (334) 834-2099
                              Fax: (334) 834-0353
                              E-mail: michael_petersen@fd.org
                              ASB-5072-E48M

FORM ATW
REV 4.1.0

# ALABAMA TRAFFIC WARNING

## ALABAMA, COUNTY OF MONTGOMERY | CITY RURAL MONTGOMERY

**TYPE VEHICLE:** COMMERCIAL
**Haz-Mat Involved:** N   **Other:** Y

**WARNING**

The undersigned, being duly sworn, deposes and says that he/she has probable cause to believe and does believe that the person herein named did, within the previous 12 months, commit the offense set forth contrary to law in that: on or about

**Date** 11/24/2006 **at approx Time** 9:30 am

| First Name | Middle/Maiden | Last |
|---|---|---|
| JORGE | | GONZALEZ |

**Address:** 122 MARIA LANE

| City | State | Zip Code |
|---|---|---|
| SAN JUAN | TX | 78589 |

| State | Driver's License Number | Social Security Number | Driver's License in Possession? | Class of License |
|---|---|---|---|---|
| TX | 02691474 | | YES | A |

| Sex | Race | DOB | Height | Weight | Eyes | Hair | Vehicle Tag Number | State | Year |
|---|---|---|---|---|---|---|---|---|---|
| M | W | 01/01/1976 | 5'11" | 250 lbs. | HZL | BRN | R7T 567 | TX | 2006 |

**Vehicle Description (year, make, model, color):** 1995 PTRB SLVR

**Employer/Owner of Vehicle (Address):** COWBOY EXPRESS   **Owner of Vehicle:** EMPLOYER

**Described Details:** Did unlawfully operate a motor vehicle or other vehicle. Location: Within the County of MONTGOMERY at or near I-85. GPS vicinity: 31°52.050959' N, 86°37.396198' W.

**IMPROPER LANE USAGE**

| UCR Code | Mile No. | Road Cd | MPH | Speed Limit | BAC |
|---|---|---|---|---|---|

**Officer Name:** C Faulk   **Officer ID:** 1166   **Agency ORI:** ALAST2100

**Officer's Signature**

---

**WARNING**
EQUIPMENT VIOLATIONS SHOULD BE REPAIRED IMMEDIATELY. FAILURE TO DO SO COULD RESULT IN THE ISSUANCE OF A TRAFFIC CITATION.

---

Somewhere in America tonight a little child will be killed.

With him will die the happiness of a Mother . . . the pride of a father.

He will be killed by the carelessness of a thoughtless driver.

That driver may be someone who is reading this right now. For in this country a human being is killed in an automobile accident every 10 minutes.

Most of these tragedies don't need to happen. They are caused by human acts. They can be prevented by human caution.

**DRIVE CAREFULLY**