IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06-CR-295-MEF |
| | ) | |
| JORGE GONZALEZ | ) | |

RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Pursuant to this Court's Order of January 18, 2007, comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its response to Defendant's Motion to Suppress, filed on or about January 10, 2007.

**Factual Background**

1.      On November 21, 2006, Alabama State Trooper Chris Faulk (Faulk) was working traffic enforcement in Montgomery County, Alabama. At approximately 9:30 a.m., Faulk was parked in the median of Interstate 85 at the 16 mile marker when he observed a tractor trailer traveling south on Interstate 85 failing to maintain a single lane of traffic. As the vehicle passed, Faulk observed the vehicle swerve over onto the fog line. Faulk pulled out to observe the vehicle. Faulk observed the vehicle cross the fog line two more times and noticed that the driver was watching him in the mirror, at which time the trucks right side completely left the roadway. Faulk affected a traffic stop on the vehicle near the 12 mile marker of the southbound lane of Interstate 85.

2.      Once the vehicle was stopped, the driver immediately exited the cab of the truck and came back to the patrol car. Faulk asked the driver for his driver's license, log book and bill of laden. The driver was identified as Jorge Gonzalez (Gonzalez) of San Juan, Texas. Faulk had Gonzalez sit in his patrol car. Faulk advised Gonzalez why he had been stopped and asked whether Gonzalez had been drinking or had been driving for a long period of time, to which Gonzalez replied in the

negative. Faulk asked where Gonzalez was coming from and Gonzalez stated that he was coming from North Carolina and going to Pharr, Texas. Faulk asked whether Gonzalez has ever been arrested before and Gonzalez stated that he had been arrested for personal use cocaine and DUI. Faulk asked if there were any illegal weapons or narcotics in the vehicle to which Gonzalez replied in the negative. Faulk asked if there were any large sums of currency in the vehicle at which point Gonzalez became nervous and hesitated in replying in the negative.

3. Faulk made a search request of BLOC/HIDTA for Gonzalez and the vehicle and asked Gonzalez for consent to search the vehicle. Gonzalez became nervous and stated that his personal things were in the tractor. Faulk explained that Gonzalez did not have to give consent to search and Gonzalez stated that the trailer could be searched but not the tractor. Faulk then issued Gonzalez a warning ticket. Faulk then called for a K-9 Trooper to aid in the stop and search. Trooper Andy Sutley (Sutley) and his dog "Leo" (the canine) arrived on scene within minutes. BLOC/HIDTA then returned Faulk's search request and gave information as to Gonzalez's arrest record and to the fact that the tractor and trailer came back to Jose Garcia d/b/a/ Cowboy Express of Pharr, Texas with a watch for smuggling illegal narcotics. Faulk and Sutley then began to search, respectively the trailer and tractor. Sutley's canine then alerted to the outside of the tractor. Based upon the canine's alert, the canine then searched the inside of the tractor and alerted.

4. A search of the tractor located a cardboard box behind a fold up bunk in the sleeping area of the tractor. The box contained fourteen (14) vacuum sealed bags containing U.S. currency. Seven (7) of the bundles were contained in clear vacuum sealed bags. The remaining seven (7) were in clear vacuum sealed bags wrapped in brown packing tape. One of the bundles was marked with the number 3000 in red marker. All of the bundles were found to be wrapped in fabric softener sheets

under the plastic wrap. Faulk advised Gonzalez of his rights and Gonzalez was taken into custody at 9:50 a.m. At 11:50 a.m. Gonzalez signed a Waiver of Rights form and indicated his understanding of his rights and his willingness to answer questions and to give a statement to authorities regarding his activities. Gonzalez provided a written statement to authorities.

### Issue Presented

5.      The issue presented is: did the officer detain Gonzalez and, if so, did the officer have reasonable suspicion to detain Gonzalez.

### Discussion

6.      Whren v. United States, 517 U.S. 806 (1996) established that the detention of a motorist is reasonable where probable cause exists to believe that a traffic violation has occurred.

7.      Gonzalez appears to concede that the stop of the vehicle was for a legitimate, recognized purpose, therefore, no further argument as to the legitimacy of the stop will be offered.

8.      If a lawful traffic stop has been made, and the basis for the traffic stop has been accomplished, the police may then request consent to search the vehicle without announcing to the driver that he is free to leave. Ohio v. Robinette, 519 U.S. 33 (1996); United States v. Purcell, 236 F.3d 1274, 1281-1282 (11th Cir. 2001).

9.      The scope of a consensual search is determined by the terms of the actual consent. United States v. Martinez, 949 F.2d 1117 (11th Cir. 1992).

10.     Once stopped, Gonzalez gave a limited consent to search the vehicle by stating to Sutley that the trailer could be searched but not the tractor. In United States v. Simms, 385 F.3d 1347 (11th Cir. 2004), the court upheld a consent search where the consent was requested after the defendant had been stopped for a traffic violation and after the "investigation" of the traffic violation

had been completed. The officer still retained custody of the defendant's license and registration when he made the request and the court held that the consent was voluntarily and freely given and the fact that the officer still had the license and registration in hand was not determinative. The court noted that after consent was given and the license and registration were returned to the defendant, he did not revoke his consent or otherwise complain about the ensuing search.

11.     In the present case, at no time did Gonzalez revoke his consent to the limited search nor did he express an objection to the canine search of the outside of the tractor. The officer, for officer's safety, waited until the canine unit's arrival to begin his search. The officer, at that time, had reasonable, articulable suspicion for conducting the search of the trailer and the outside of the tractor to include: the defendant's hesitation and nervousness when questioned as to whether a large sum of money was present in the vehicle, and the information received prior to the search from BLOC/HIDTA as to Gonzalez's arrest record and to the fact that the tractor and trailer came back to Jose Garcia d/b/a/ Cowboy Express of Pharr, Texas with a watch for smuggling illegal narcotics. Once the canine alerted to the outside of the tractor, the officer, taking into consideration the factors that gave rise to reasonable suspicion and the alert, then had probable cause to extend the scope of the search, without consent or warrant, to the interior of the tractor.

12.     The Court has held that there is no reasonable expectation of privacy in tires or other exterior parts of vehicles, or in the interior of a vehicle visible from the outside. New York v. Class, 475 U.S. 106 (1986), therefore, the defendant had no expectation of privacy in the outside of the tractor and the canine sniff/alert to the outside of the tractor was not an illegal act.

13.     In Chambers v. Maroney, 399 U.S. 42 (1970), the Court explained that when there is probable cause to believe that contraband is in a vehicle, the vehicle may be searched without a

warrant. The basis for this exception is rooted in the exigent circumstances involved in the movable target. In <u>Pennsylvania v. Labron</u>, 518 U.S. 938 (1996), the Court reiterated that if there is probable cause to search a car, there is no need to show the existence of particular exigent circumstances. The fact that the car is involved is itself justification for dispensing with the search warrant requirement.

14. Based on the fact that Gonzalez gave consent to search, never revoked the consent, had no expectation of privacy in the outside of the vehicle and the fact that the officer had reasonable, articulable suspicions that blossomed into probable cause to search after the canine alert, the United States respectfully requests this Court deny Defendant's Motion to Suppress in its' entirety.

Respectfully submitted this the 25th day of April, 2007.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/ Susan R. Redmond
> SUSAN R. REDMOND
> Assistant United States Attorney
> Post Office Box 197
> Montgomery, Alabama 36101
> (334) 223-7280
> (334) 223-7135 Fax
> susan.redmond@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:06-CR-295-MEF |
| | ) |
| JORGE GONZALEZ | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Michael J. Petersen, Esq..

                                                LEURA G. CANARY
                                                UNITED STATES ATTORNEY

                                                /s/ Susan R. Redmond
                                                SUSAN R. REDMOND
                                                Assistant United States Attorney
                                                Post Office Box 197
                                                Montgomery, Alabama 36101
                                                (334) 223-7280
                                                (334) 223-7135 Fax
                                                susan.redmond@usdoj.gov