IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO.  2:06cr295-MEF |
| | ) | (WO) |
| JORGE GONZALEZ | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Jorge Gonzalez ("Gonzalez"), was charged on December 13, 2006, in a single-count indictment, with knowingly concealing and transporting or attempting to transport $132,615.00 in United States currency from the United States to Mexico with the intent to evade currency reporting requirements, in violation of 31 U.S.C. § 5332(a)(1).  On January 10, 2007, Gonzalez filed a motion premised upon the Fourth Amendment to suppress all physical evidence seized and statements obtained as a result of a police traffic stop and search of the truck driven by him on November 21, 2006, on Interstate 85 in Montgomery, Alabama, in the Middle District of Alabama.  (Doc. # 17 at 1).

Gonzalez does not challenge the initial traffic stop, but he contends (1) that the traffic stop was improperly extended beyond the duration necessary to effectuate the stop, and (2) the officer's request to search his vehicle was unsupported by probable cause.  At the evidentiary hearing, Gonzalez also alleged that he was effectively arrested without probable cause when he was detained in the back seat of the police car during the search, and under circumstances which prevented him from having the ability to withdraw his consent.[1]

---

[1] It is undisputed that Gonzalez gave his consent to search the trailer of his truck but specifically declined to consent to the search of the tractor of the truck.

On May 23, 2007, the Court held an evidentiary hearing on the motion to suppress. For the reasons which follow, the Court concludes that the motion to suppress is due to be denied.

**FACTS**

The material facts are largely undisputed. On November 21, 2006, state trooper Chris Faulk ("Faulk") was patrolling Interstate 85 in Montgomery County, Alabama. At approximately 9:30 a.m., Faulk was parked in the median at mile marker 16, observing traffic when he observed the defendant's tractor trailer, traveling southbound on Interstate 85, cross the fog line. Faulk followed the truck and watched it cross the fog line twice more before he initiated a traffic stop for improper lane usage.

By the time Faulk stopped and got out of his patrol car, Gonzalez had exited the tractor and was standing at the back of the trailer with his paperwork in hand. Gonzalez got into the front passenger seat of Faulk's patrol car. In response to Faulk's questions, Gonzalez identified himself, said he was traveling from North Carolina to Texas and denied that he had been drinking or driving too long. Gonzalez also admitted to prior arrests for cocaine possession and driving under the influence (D.U.I.). Gonzalez denied having any weapons or illegal narcotics in the truck. When Faulk asked Gonzalez if he had any large sums of money, Gonzalez appeared nervous, backed up into the window, hesitated and then said "no." Faulk perceived Gonzalez' demeanor during this exchange about the money to be different from his demeanor when giving responses to other questions.

Faulk explained to Gonzalez that he was going to write a warning ticket for improper

lane usage. As Faulk was printing the warning ticket, he asked Gonzalez for consent to search the tractor trailer. Gonzalez consented to a search the trailer but specifically declined consent to search the tractor because the tractor contained his personal property. Faulk advised Gonzalez that he did not have to give consent. Again Gonzales consented to a search of the trailer. Although Faulk had printed the warning ticket and explained it, at the time he asked for consent to search, Faulk had not yet given the ticket to Gonzalez.

Faulk then requested Gonzalez' criminal history, and called for a canine unit to conduct the search. The canine unit arrived, and the trooper explained the search process to Gonzalez. Based on the results from his request for a criminal history report, Faulk learned that Gonzalez did indeed have prior arrests for cocaine possession and D.U.I. He also learned that Cowboy Express Trucking Company, the trucking company for which Gonzalez was driving, was on watch for trafficking in cocaine.

Faulk placed Gonzalez in the rear of the police car before the search began. Faulk testified that he moved Gonzalez from the front seat to the back seat of the patrol car to prevent him from fleeing. Gonzalez was placed in the back seat and the search began within eight to ten minutes of the initiation of the traffic stop and shortly after Gonzales had consented to a search of the trailer. During the search the dog came near the tractor and alerted to the door of the tractor. The troopers then let the dog inside the tractor where the dog alerted to the upper bunk in which officers found a cardboard box containing bundles of money. Gonzalez was arrested at 9:50 a.m. The entire stop and search lasted approximately 20 minutes.

## DISCUSSION

### A. Validity of Traffic Stop

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Absent probable cause, law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). *See also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996); *see also*, *United States v. Pruitt,* 174 F.3d 1215, 1217, fn. 1 (11th Cir. 1999) ("We agree that, because Pena was speeding, and a traffic violation had thus occurred, probable cause existed for the stop.[2] Accordingly, the stop was reasonable for purposes of the Fourth Amendment and withstands review."). A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles."

---

[2] Because the court concludes that the officer had probable cause to stop the vehicle, the court pretermits discussion of whether reasonable suspicion would have sufficed to support the traffic stop. *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("Because a routine traffic stop is only a limited form or seizure, it is more analogous to an investigative detention than a custodial arrest. . . . Therefore, we analyze the legality of these stops under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).") (citations in original omitted).

*United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)).

In this case, Faulk stopped Gonzalez' vehicle only after having probable cause to believe that he had committed a traffic violation. Section 32-5A-88 of the Code of Alabama mandates that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver first ascertained that such movement can be made with safety." ALA. CODE § 32-5A-88 (1975). Faulk testified that he saw the defendant's vehicle cross the fog line three times. Thus, Faulk stopped Gonzalez only after having probable cause to believe that he had committed a traffic violation. *See also United States v. Johnson*, 2005 WL 1412117 *2 (11th Cir. 2005) (fact that driver was swerving was sufficient justification to stop vehicle to insure that driver was neither drunk or sleeping); *United States v. Harris*, 928 F.2d 1113, 1116-17 (11th Cir. 1991) (same). Based on the objective facts, the court concludes that the initial stop of the vehicle was not in violation of the Fourth Amendment.

### B. Duration of the Traffic Stop

Gonzalez asserts that the duration of the traffic stop was unnecessarily prolonged and thus, unreasonable. After Faulk lawfully detained Gonzalez based upon the traffic violation, Faulk was entitled to check driver's license, registration and insurance information "including questioning the driver about the traffic violation, requesting consent to search the

vehicle *and* running a computer check for outstanding warrants." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999).

Here, Faulk stopped a vehicle whose driver had committed a traffic violation. Immediately upon stopping, Gonzalez left his vehicle and met Faulk at the back of the truck with his papers in his hands. Faulk testified that this behavior was suspicious because truck drivers usually did not get out of their vehicles with papers in hand. When Faulk asked Gonzalez if he was carrying any large sums of money, Gonzalez reacted nervously and differently to that particular question than he did to questions about weapons and illegal narcotics.

Faulk then requested consent to search the truck. Gonzalez consented to a search of the trailer. It is undisputed that Gonzalez consented to the search of the trailer before he had been given the warning ticket and within eight to ten minutes of the initiation of the traffic stop. The entire traffic stop, including the search, was concluded in approximately 20 minutes.

Gonzalez argues that the duration of the traffic stop was unreasonable because the traffic stop was "extended longer than necessary." Gonzalez conveniently ignores the fact that he consented to the search within eight to ten minutes of being stopped by Faulk. Moreover, Gonzalez reaffirmed his consent even after being told by Faulk that he did not have to consent. The court is hard-pressed to find that the pre-consent 8 to 10 minute period is unreasonably long for a traffic stop in light of this circuit's prior decisions concluding that fourteen (14) minutes and fifty (50) minutes are not unreasonable lengths for time to conduct

a traffic stop. *See United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001) *and United States v. Hardy,* 855 F.2d 753, 761 (11th Cir. 1988). *See also United States v. $175,722.77 in United States Currency, more or less*, 2007 WL 1339853 *2 (11th Cir. May 8, 2007) (seven minutes not unreasonable in which to conduct a traffic stop). Accordingly, the court concludes that a traffic stop conducted in eight to ten minutes was not unreasonable. Once Gonzalez gave his consent, the clock re-started for purposes of evaluating the reasonableness of the duration of the intrusion. *See United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir.1999) ("further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter"). Gonzalez has presented no evidence from which the court can conclude that after Gonzalez' consent Faulk's actions unreasonably extended the traffic stop.[3]

### C. Detention in Patrol Car Constitutes an Arrest

At the evidentiary hearing on his motion to suppress, Gonzalez argued that his placement in the back seat of Faulk's patrol car effectively constituted an arrest without probable cause because he was unable to withdraw his consent to search. Faulk's request to Gonzalez that he sit in the back seat of the patrol car does not render his actions unlawful. *Pennsylvania v. Mimms,* 434 U.S. 106 (1977).

---

[3]Gonzalez' argument that the request for consent to search must be supported by probable cause conflates the issue of the validity of the initial stop and what may take place after a stop supported by probable cause. As explained above, the initial stop was supported by probable cause. Because the consent was requested during a reasonable period of time after the stop, the request did not need independent support.

In *Los Angeles County, CA v. Rettele*, 550 U.S. ___, 127 S.Ct. 1989 (2007), police officers, armed with a search warrant, detained two people in their home while the officers conducted a search of the premises. The Court reiterated the holding in *Michigan v. Summers*, that police officers "may detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981). If officers can detain residents of a home while conducting a search, it follows that officers may also detain occupants of a vehicle.[4]

Here, Faulk stopped a vehicle whose driver had committed a traffic violation. Faulk explained to Gonzalez that he was going to give him a warning ticket for improper lane usage. While the warning ticket was printing, Faulk requested and obtained consent to search. Faulk then requested a criminal history report and called for a canine unit to conduct the search. Although he was placed in the rear of the patrol car, Gonzalez was not handcuffed. Finally, as already concluded, the duration of the detention was not unreasonable. Gonzalez' detention did not violate his Fourth Amendment rights.

### D. Search Subsequent to Traffic Stop

Within ten (10) minutes after the stop, Gonzalez gave Faulk consent to search the trailer. At the evidentiary hearing, the defendant also challenged his placement in the back

---

[4]Gonzales argues in his brief that his detention was unreasonable as well as constituting an arrest. While it is correct that the police can be said to have seized an individual if, in view of all the surrounding circumstances, a reasonable person would believe that he was not free to leave, *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988), a *Terry v. Ohio*, 392 U.S. 1(1968), investigatory stop is not an arrest merely because a reasonable person would not feel free to leave. *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). If every seizure were an arrest, *Terry* would be rendered meaningless. No bright line test separates an investigatory stop from an arrest. Instead, whether a seizure has become too intrusive to be an investigatory stop and constitutes an arrest depends on the degree of intrusion, considering all the circumstances. *United States v. Roper*, 702 F.2d 984, 985 (11th Cir. 1983). Aside from all this, Gonzalez' arrest and *Terry* arguments ignore the undisputed fact of his consent to search.

seat of the patrol car because in that position he claims he was unable to revoke his consent to search. The law is clear that "[a]n officer conducting a routine traffic stop may request consent to search the vehicle." *Purcell*, 236 F.3d at 1281. "A consensual search is constitutional if it is voluntary; if it is the product of an "essentially free and unconstrained choice."" *Id.* Gonzalez does not assert, and there is no evidence to support a conclusion, that his consent to search was not voluntary. It is undisputed that Gonzalez gave Faulk consent to search the trailer but declined to consent to a search of the tractor. "[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991).

More importantly, however, there is no evidence before the court that at any time during the search, Gonzalez attempted to withdraw his consent to the search. Absent that evidence, the fact that he might not have been able to communicate withdrawal of consent is immaterial. The court concludes that Gonzalez' consent to search, incident to a lawful traffic stop, was voluntary and not the product of any force or coercion. *See generally United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001).

Once the canine alerted on Gonzalez' tractor, the alert supplied not only reasonable suspicion, but probable cause to search the property on which the dog alerted. *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) ("[P]robable cause arises when a drug-trained canine alerts to drugs."); *United States v. Scarborough*, 128 F.3d 1373, 1378 (10th Cir. 1997)

9

("It is undisputed that a drug sniffing dog's detection of contraband in itself establishes probable cause for a search warrant."). When the property alerted to is in a vehicle, the Constitution permits a search of the vehicle immediately, without the need to resort to a warrant. *California v. Acevedo*, 500 U.S. 565, 581 (1991) (upholding warrantless search of a paper bag in an automobile which the police had probable cause to believe contained contraband); *United States v. Forker*, 928 F.2d 365 (11th Cir. 1991). *See also Carroll v. United States*, 267 U.S. 132 (1925).

It is undisputed that it was the canine's alert on the tractor that prompted the officers' search of that area. Consequently, under these circumstances, probable cause existed to support the search of the tractor. The search of the tractor and the seizure of the money did not violate the Fourth Amendment.

## CONCLUSION

Accordingly, for the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **June 13, 2007.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

   Done this 31st day of May, 2007.

                    /s/Charles S. Coody
                    CHARLES S. COODY
                    CHIEF UNITED STATES MAGISTRATE JUDGE