IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:06cr295-MEF-SRW |
| | ) | |
| JORGE GONZALEZ | ) | |

## OBJECTIONS TO REPORT AND RECOMMENDATION

**COMES NOW JORGE GONZALEZ** by and through undersigned counsel, Michael J. Petersen, and respectfully submits the following objections to the Magistrate Judge's Recommendations dated May 10, 2007. The Mr. Gonzalez would object to the Magistrate Judge's findings as to: "Section B. Duration of the Traffic Stop;" "Section C. Detention in Patrol Car Constitutes an Arrest;" and "Section D. Search Subsequent to Traffic Stop;" and finally, as to the Recommendation that his Motion to Suppress be denied, as discussed in detail individually below. Mr. Gonzalez does not object to the finding by the Magistrate Judge in "Section A. Validity of the Traffic Stop," that the "initial stop of the vehicle was not in violation of the Fourth Amendment." (Doc. #35 at 5).

## SPECIFIC OBJECTIONS

1.  Section B. Duration of the Traffic Stop

Mr. Gonzalez objects to the Magistrate Judge's finding that "Gonzalez has presented no evidence from which the court can conclude that after Gonzalez' consent Faulk's actions unreasonably extended the traffic stop." (Doc. # 35 at 7)

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles."

*United States v. Arvizu*, 534 U.S. 266, 273 (2002). The Supreme Court held in *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 838 (2005) that the employment of a dog sniff during a legitimate traffic stop does not constitute a constitutionally cognizable intrusion upon legitimate privacy interests. However, in *Caballes*, the canine sniff occurred before the traffic citation was issued. *Id*. Specifically, the Court held that conducting a dog sniff would not change a traffic stop that was lawful when it began and was otherwise executed in a reasonable manner into an unlawful search, unless the manner in which the dog sniff itself was conducted infringed the citizen's constitutionally protected interest in privacy. *Id.* at 408. In the present case, Trooper Faulk testified at the evidentiary hearing that he was "printing his warning out," (Doc. #36 at 11), at the time that he asked Mr. Gonzalez for his consent to search. (Doc. #36 at 11). In addition, Trooper Faulk testified that it was not until after he had printed the warning citation and he contacted "Bloc" using his cell phone, that he called for a canine trooper. (Doc. #36 at 13).

However, Trooper Faulk's action of detaining Mr. Gonzalez after the traffic warning was complete, rendered the additional detention was unlawful. *Caballes* clearly assumed that the court would have been warranted in suppressing the evidence "if the dog sniff had been conducted while the respondent was being unlawfully detained." *Cabelles* at 408. That is what occurred in the present case. Mr. Gonzalez was detained by Trooper Faulk for an additional 8 to 10 minutes following the conclusion of the traffic stop, and then, before the canine sniff search began, was arrested without probable cause by being placed in the rear of Trooper Faulk's vehicle from which location he could neither leave, nor communicate with either trooper. Although the *Cabelles* Court placed no probable cause or reasonable suspicion requirement on the ability to conduct a canine sniff for drugs during a legitimate traffic stop for a traffic violation, the Court did note, however, that "a seizure . . . justified solely by the interest in issuing a warning ticket to the driver can become

unlawful if . . . prolonged beyond the time reasonably required to complete [the issuance]." *Id*. at 407. At the evidentiary hearing, Trooper Faulk testified that Trooper Sutley did not arrive with the K-9 for an additional 8 to 10 minutes after he was called. (Doc. #36 at 19). Therefore, Trooper Faulk detained Mr. Gonzalez for an additional 8 to 10 minutes following the conclusion of the traffic stop. In addition, at the hearing, Trooper Faulk testified that, following Trooper Sutley's interview of Mr. Gonzalez when that trooper arrived with the K-9, Mr. Gonzalez was moved from the front passenger seat of Trooper Faulk's vehicle to the back seat of the vehicle. (Doc. #36 at 19). Trooper Faulk testified at Mr. Gonzalez was unable to leave the vehicle once placed into the back seat. (Doc. #36 at 19) Therefore, as discussed in greater detail below, Mr. Gonzalez was placed under arrest prior to the commencement of the search and without probable cause for his arrest. As Trooper Faulk testified, the traffic citation was a warning only and not an arrest. (Doc. #36 at 9). Thus, Mr. Gonzalez' detention became unlawful because it was prolonged beyond the time "reasonably required to complete the [issuance]." *Cabelles* at 407.

In the Report and Recommendation, the Magistrate relied upon several previous circuit decisions concerning the duration of traffic stops. *See United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001); *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988); *United States v. $175,722.77 in United States Currency, more or less*, 2007 WL 1339853 *2 (11th Cir. May 8, 2007); *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir.1999). (Doc. #36 at 7). However, a reliance upon cases regarding the duration of a traffic stop is misplaced under *Caballes*. The issue presented was whether, due to the fact that because the traffic stop was completed 8 to 10 minutes prior to the arrival of the trooper with the K-9, that Mr. Gonzalez' was unlawfully detained pursuant to the Supreme Court's decision in *Caballes*. As stated in argument above, the *Caballes* Court held that a detention following a traffic stop becomes unlawful if it is prolonged beyond the time "reasonably

required to complete the [issuance of the traffic citation]." *Caballes* at 407. That is precisely what occurred here. Mr. Gonzalez was detained beyond the time necessary to issue the traffic citation and then was further detained and arrested by being placed in the rear of Trooper Faulk's vehicle from which he could neither communicate with either trooper or exercise his Fourth Amendment rights and terminate the encounter. The placement of Mr. Gonzalez in the rear of the trooper's vehicle changed the consensual encounter into an arrest, and that arrest was improper. Thus the Magistrate's reliance on *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir.1999) ("further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter") (Doc. #36 at 7) misapprehends the fact that when Trooper Faulk placed Mr. Gonzalez into the rear seat of the trooper's vehicle from which Mr. Gonzalez could neither withdraw his consent to search or terminate the encounter in accordance with his Fourth Amendment rights, the previously consensual encounter turned into an arrest. *See Caballes* at 407.

In other words, the *Caballes* Court placed a "reasonableness" limitation on the duration of such encounters but refused to put any other limitations on the ability of police to conduct canine sniffs during the course of a traffic stop or even to expand on what "reasonable" may mean in a traffic stop situation.[1] When Mr. Gonzalez was required to wait for the arrival of Trooper Sutley and the K-9, this seizure had become unlawful because it had been prolonged beyond the time required to complete the issuance of the traffic warning.

The Magistrate's finding that "Gonzalez has presented no evidence from which the court can conclude that after Gonzalez' consent Faulk's actions unreasonably extended the traffic stop" (Doc.

---

[1]This limitation on the duration actually has nothing to do with the canine sniff itself but rather points to the fact that a prolonged detention of a driver beyond the time required to issue the warning or citation could result in the detention being deemed an arrest for Fourth Amendment purposes, an arrest for which the officer would have no probable cause or likely even reasonable suspicion. *Id*.

#36 at 7) simply misapprehends both the fact that it was Trooper Faulk who placed Mr. Gonzalez under arrest by locking him into the rear of the Trooper's vehicle (Doc. #35 at 16) and also the fact that Trooper Sutley did not arrive for 8 to 10 minutes after the traffic stop had concluded. (Doc. #35 at 19).

Therefore, the Magistrate should have found that Mr. Gonzalez was unlawfully detained and that the subsequent search was improper. *Cabelles* at 408.

2.   **Section C. Detention in Patrol Car Constitutes an Arrest**

Mr. Gonzalez objects to the Magistrate Judge's finding that "the duration of the detention was not unreasonable. Gonzalez' detention did not violate his Fourth Amendment rights." (Doc. #35 at 8).

The Supreme Court has identified at least three separate categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick,* 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio,* 392 U.S. 1 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois,* 422 U.S. 590 (1975). Trooper Faulk's action in placing Mr. Gonzalez in the rear of the trooper's vehicle at the commencement of the search changed the nature of the encounter from a legitimate and restrained investigative stop into a custodial detention requiring scrutiny under *Brown*.

Trooper Faulk admits during direct examination that he had put Mr. Gonzalez in the back of the vehicle so that "the subject wouldn't have a chance to open the door and run on foot." (Doc. #35 at 16). At no point prior to being issued the warning ticket to did Mr. Gonzalez, attempt to flee,

act in violent manner, search for a weapon or compromise Trooper Faulk's safety. Mr. Gonzalez was not known to have an outstanding warrant, he had committed no known crime, and he had been given a warning citation. (Doc. #35 at 14). The Magistrate relied upon *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), to find that "Faulk's request to Gonzalez that he sit in the back seat of the patrol car [did] not render his actions unlawful." However, the instant case is clearly distinguishable from *Pennsylvannia v. Mimms*. In *Mimms*, the Court held that an officer may ask the driver to *exit* from the vehicle. Specifically, in dicta at footnote 6, the Court stated they "hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Mimms* at 111, n.6. Trooper Faulk's own testimony belies the finding that this was a request. The Trooper stated he "put" Mr. Gonzalez into the locked rear of the trooper's vehicle with the specific and intentional purpose of restricting Mr. Gonzalez's Fourth Amendment freedom from unlawful restraint. (Doc. #35 at 16). In *Mimms*, the Court clearly did not reach the issue of whether in the course of a traffic violation, could the police officer lock the driver in the back seat of the police vehicle.

The Magistrate also relied upon *Los Angeles County, CA v. Rettele*, 550 U.S. ___, 127 S.Ct. 1989 (2007), for the proposition that "if officers can detain residents of a home while conducting a search, it follows that officers may also detain occupants of a vehicle." (Doc. #36 at 8). However, this misapprehends one critical difference between *Rettele* and the instant case. As recognized by the Magistrate, in *Rettle*, the police officers were "armed with a search warrant." 452 U.S. at 705. *See* Doc. #36 at 8. Here is the critical difference. In *Rettele*, the officers obviously had probable cause to search the house and just as obviously a judicial officer had reviewed either testimony or affidavit(s) in order to find probable cause to issue the search warrant for the house. *See generally*

*Johnson v. United States*, 333 US 10 (1948); *Giordenello v. United States*, 357 US 480 (1958). In the instant matter, the government is asserting that the search was consensual and in fact, the Magistrate found that the search was consensual. (Doc. #36 at 7). However, this clearly ignores the fact that, upon being placed in the back seat of the trooper's car, Mr. Gonzalez was no longer "free to go." As our Circuit Court stated in *United States v. Purcell*, 236 F.3d 1274, it is "detention, not questioning, is the evil at which *Terry's* prohibition is aimed." 236 F.3d at 1281 (*citations omitted*). In the Report and Recommendation, the Magistrate stated that "[t]he court concludes that Gonzalez' consent to search, incident to a lawful traffic stop, was voluntary and not the product of any force or coercion. *See generally United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001)." (Doc. #36 at 9).

Our Circuit has held that "[a] Fourth Amendment seizure occur[s] when there is a governmental termination of freedom of movement through means intentionally applied." *Miller v. Harget*, 458 F.3d 1251, 1258 (11th Cir. 2006). Through his action of putting Mr. Gonzalez in the rear of his vehicle from which Mr. Gonzalez could neither communicate nor voluntarily terminate the consensual encounter, Trooper Faulk effected a Fourth Amendment seizure. As Trooper Faulk testified, he placed Mr. Gonzalez in the rear of the vehicle so that he "wouldn't have a chance to open the door and run on foot." (Doc. #35 at 16). By his own admission, Trooper Faulk intentionally terminated Mr. Gonzalez's freedom of movement and thus, prior to the canine alert, and without probable cause, effected a Fourth Amendment seizure. Our Circuit held that the officer's objective behavior must involve a show of authority that communicates that a citizen's liberty is restrained. *U.S. v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002). Without a doubt, the act of placing Mr. Gonzalez in a vehicle from which he was restrained from leaving without the Trooper's consent, restrained his liberty.

Thus, by restraining Mr. Gonzalez in the rear of the trooper's vehicle, Trooper Faulk effectuated a Fourth Amendment seizure which terminated the consensual nature of the encounter prior to the commencement of the search. Therefore, as shown above, the ensuing search of Mr. Gonzalez' tractor, commencing with the alert by the canine, was an unlawful search, rendered thus by the unlawful Fourth Amendment seizure of Mr. Gonzalez. Therefore, the Magistrate should have found that Mr. Gonzalez was seized by Trooper Faulk's actions and that the subsequent search was improper.

3. **Section D. Search Subsequent to Traffic Stop**

Mr. Gonzalez objects to the finding of the Magistrate Judge that "there is no evidence before the court that at any time during the search, Gonzalez attempted to withdraw his consent to the search." (Doc. #35 at 9). Mr. Gonzalez also objects to the court's conclusion that "Gonzalez' consent to search, incident to a lawful traffic stop, was voluntary and not the product of any force or coercion." (*citation omitted*) (Doc. #35 at 9). And finally, Mr. Gonzalez objects to the finding that "[t]he search of the tractor and the seizure of the money did not violate the Fourth Amendment." (Doc. #35 at 10).

The Magistrate's finding that "there is no evidence . . . Gonzalez attempted to withdraw his consent," (Doc. #35 at 9), belies the facts of the instant matter. It is undisputed, that Trooper Faulk placed Mr. Gonzalez into the rear compartment of the trooper's vehicle before the search started. (Doc. #36 at 16). Trooper Faulk testified on direct examination that the reason for doing this was "so that the subject wouldn't have a chance to open the door and run on foot." (Doc. #36 at 16). The Trooper stated that this was done "at the beginning" of the search. Doc. #36 at 16). Further, Trooper Faulk testified that he was with the canine unit at the front of the tractor when the search started. (Doc. #36 at 15). Trooper Faulk also testified that his vehicle was parked on the side of the roadway

behind and on the right side of the trailer of Mr. Gonzalez' tractor-trailer unit. (Doc. #36 at 7). Since the troopers were separated from the vehicle Mr. Gonzalez was confined in by the length of the tractor and trailer units at the time the canine unit alerted, (Doc. #36 at 15), Mr. Gonzalez clearly could not have revoked his consent to search from the isolation of the locked rear passenger compartment of Trooper Faulk's vehicle. Therefore, the fact that there was no evidence presented to the Court that Mr. Gonzalez revoked his permission is overcome by the fact that the consensual search had become coercive through the actions of Trooper Faulk in locking him into the rear compartment of the trooper's vehicle without probable cause for an arrest. Put quite simply, Trooper Faulk arrested Mr. Gonzalez without probable cause and then, having changed a consensual search into a coercive search, conducted the canine unit's sniff of Mr. Gonzalez' vehicle. The finding that "the fact that he might not have been able to communicate withdrawal of consent is immaterial," (Doc. #35 at 9), effectively revokes Mr. Gonzalez' Fourth Amendment right to be free of "unreasonable searches and seizures," U.S. Const. Amend. IV; *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and changed this otherwise consensual encounter into a seizure. The fact that subsequently the canine alerted on the tractor is not relevant to the fact that before the search began, Mr. Gonzalez had been arrested without probable cause by being placed in the back of the trooper's vehicle so that he "could not run away on foot." (Doc. #35 at 16).

  The trooper's act of transferring Mr. Gonzalez from the front of the trooper's vehicle, where he was free to exit and terminate the encounter should he choose to do so, to the rear compartment of the vehicle before the search commenced, from which there was neither the ability to communicate with the trooper nor to exit the vehicle and terminate the consensual encounter, changed the nature of the consensual encounter to a seizure without probable cause in violation of Mr. Gonzalez' Fourth Amendment rights. As stated previously, the purpose of the transfer was to

insure that Mr. Gonzalez "could not run away on foot." (Doc. #35 at 16). At the point he was transferred, the troopers did not have either probable cause or even a reasonable suspicion to seize Mr. Gonzalez. Our Circuit held in *United States v. Perkins*, that a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and that it is analogous to an investigative detention. 384 F.3d 965, 969 (11th Cir. 2003). Therefore, in *Perkins*, the Circuit Court held that the legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). The court held that *Terry* requires that such stops require "an officer [to] have an objective, reasonable suspicion of criminal activity," before seizing the individual. *Id*.

However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (*citing, Terry v. Ohio* at 1879); *See also, United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop). The fact that the driver and passenger provide slightly inconsistent statements or are nervous does not create "reasonable suspicion" upon which a further detention is warranted. *Perkins*, 348 F.3d at 965. Trooper Faulk testified that the reason for his calling for a canine unit was because Mr. Gonzalez "became very nervous" (Doc. #36 at 10) when asked if he had any "large sums of money in the vehicle." (Doc #36 at 10). This occurred at the time the warning was printing out and was the reason Trooper Faulk thought that "there might be something in the vehicle." (Doc #36 at 11). As held in *Perkins*, if "nervousness" does not provide the "reasonable suspicion" upon which to base a further detention under *Terry*, it certainly does not provide the grounds to seize Mr. Gonzalez and lock him into the back of Trooper Faulk's vehicle before even commencing the search. *Perkins*, 348 F.3d at 965. As noted by our Circuit in *Perkins*, the Supreme Court has recognized that nervousness can be explained by the "unsettling show of authority" that can create substantial anxiety with every

traffic stop. *Perkins* 348 F.3d at 970. As the Court noted in affirming the District Court's grant of Perkins' motion to suppress:

> In this Circuit, we have required more than the innocuous characteristics of nervousness, a habit of repeating questions, and an out-of-state license for giving rise to reasonable suspicion. *See United States v. Pruitt,* 174 F.3d 1215, 1221 (11th Cir. 1999) (holding that the fact that the driver was Hispanic and had an out-of-state license plate was not enough to detain him beyond the issuance of the speeding ticket); *United States v. Tapia,* 912 F.2d 1367, 1371 (11th Cir. 1990) ('Being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama) . . . fail to suggest that appellant . . . [was] engaged in any criminal activity other than speeding on the highway.').

*Perkins*, 348 F.3d at 971.

Therefore, the Magistrate should have found that the search of Mr. Gonzalez' tractor unit was improper because of his unconstitutional seizure prior to the commencement of the canine search.

4.   **Recommendation Denying Motion to Suppress**

For the reasons stated in sections 1 through 3 above, Mr. Gonzalez objects to the Magistrate Judge's Recommendation denying his motion to suppress (Doc. #35 at 10) and urges the District Judge to find, on *de novo* review that Mr. Gonzalez's Motion to Suppress should be granted and all material evidence discovered and any and all statements made by Mr. Gonzalez are the "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

**WHEREFORE,** Mr. Gonzalez asks this Court enter an order suppressing all evidence (statements and items) seized from the Peterbuilt tractor bearing Texas license plate R7TJ67 which he was driving southbound on Interstate 85 at about mile marker 12 on or about November 21, 2006. This evidence includes, but is not limited to:

(a) any and all physical evidence seized from the vehicle;

(b) any and all statements made by Mr. Gonzalez during or after any stop, search or seizure of the vehicle and/or after Mr. Gonzalez' arrest; and

(c) any and all evidence obtained as a result or "fruit" of any such seizures.

Dated this 13th day of June 2007.

                            Respectfully submitted,

                            s/ Michael J. Petersen
                            MICHAEL J. PETERSEN
                            Assistant Federal Defender
                            201 Monroe Street, Suite 407
                            Montgomery, Alabama 36104
                            Phone: (334) 834-2099
                            Fax: (334) 834-0353
                            E-mail: michael_petersen@fd.org
                            ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:06cr295-MEF-SRW |
| | ) | |
| JORGE GONZALEZ | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Susan Redmond, Esq.
>Assistant United States Attorney
>Department of Justice
>1 Court Square
>Montgomery, Alabama 36104

>Respectfully submitted,
>
>s/ Michael J. Petersen
>MICHAEL J. PETERSEN
>Assistant Federal Defender
>201 Monroe Street, Suite 407
>Montgomery, Alabama 36104
>Phone: (334) 834-2099
>Fax: (334) 834-0353
>E-mail: michael_petersen@fd.org
>ASB-5072-E48M